Commerce Memorandum,
RE: Post-Preliminary Analysis Calculations
for Qatar Melamine Company/
Qatar Chemical and Petrochemical Marketing
and Distribution Company (Muntajat)
Q.P.J.S.C. (C-518-002) (Sept. 12, 2024)

C.R. 304-305

P.R. 249

**UNITED STATES DEPARTMENT OF COMMERCE**
International Trade Administration
Washington, D.C. 20230

C-518-002
Investigation
POI: 01/01/2023 – 12/31/2023
**Public Version**
E&C/OII: SK/SP

DATE: September 12, 2024

MEMORANDUM TO: Genevieve Coen
Program Manager
AD/CVD Operations, Office II
Enforcement and Compliance

FROM: Samantha Kinney
Senior International Trade Compliance Analyst
AD/CVD Operations, Office II
Enforcement and Compliance

SUBJECT: Countervailing Duty Investigation of Melamine from the State of
Qatar: Post-Preliminary Analysis Calculations for Qatar Melamine
Company/Qatar Chemical and Petrochemical Marketing and
Distribution Company (Muntajat) Q.P.J.S.C.

---

The following is an explanation of the calculation methodology used by the U.S. Department of
Commerce (Commerce) in the post-preliminary determination of the countervailing duty (CVD)
investigation of melamine from the State of Qatar (Qatar).[1] The period of investigation (POI) is
January 1, 2023, through December 31, 2023. Attachment I contains a summary of the
calculated countervailable subsidy rates for Qatar Melamine Company (QMC)/ Qatar Chemical
and Petrochemical Marketing and Distribution Company (Muntajat) Q.P.J.S.C. and its cross-
owned affiliates: Qatar Fertiliser Company (P.S.C.) (QAFCO), Industries Qatar Q.P.S.C.
(Industries Qatar), and Qatar Energy. Attachment II contains the detailed calculations.

**Total Post-Preliminary Subsidy Rate:**      **2.29 percent** *ad valorem*

**Total Subsidy Rate:**      **42.78 percent** *ad valorem*

    **I.      General**

        A.  Allocation Period

---

[1] *See* Memorandum, "Post-Preliminary Analysis Memorandum for the Countervailing Duty Investigation of
Melamine from the State of Qatar," dated concurrently with this document (Post-Preliminary DM).

The allocation period of the average useful life (AUL) period in this proceeding of 9.5 years is unchanged from the *Preliminary Determination*.[2]

### B. Attribution of Subsidies

Our attribution methodology as to QAFCO and QatarEnergy is unchanged from the *Preliminary Determination*.[3]

### C. Sales Denominators

Our methodology regarding denominators is unchanged from the *Preliminary Determination* with the exception of QatarEnergy's sales denominator.[4]  In the *Preliminary Determination* Commerce used QatarEnergy's POI consolidated sales value of sales made by itself and its Qatari subsidies of [            ] QAR and subtracted the sales value [            ] QAR for sales made by QatarEnergy's Non-Qatari subsidies.  However, the sales value of [            ] QAR was already net of the sales value made by non-Qatari subsidies.  Therefore, in this post-preliminary determination we are using QatarEnergy's total POI consolidated sales value (including the sales made by non-Qatari subsidies) of [            ] QAR and subtracting the sales value of sales made by non-Qatari subsidies and the sales value of sales that QatarEnergy made to QAFCO.  This results in the sales denominator for QatarEnergy changing from [            ] QAR in the *Preliminary Determination* to [            ] QAR in this post-preliminary determination.  Commerce will correct QatarEnergy's denominator for the programs for which a benefit was calculated in the *Preliminary Determination* in the Final Determination.

*See* Attachment II, "Sales Denominators.BPI," "Sales.BPI," and "Benefit.BPI" sheets.

### D. Exchange Rate

We made currency conversions for the POI based on the exchange rates reported at https://enforcement.trade.gov/exchange/index.html.

## II.    Programs Preliminarily Determined to Be Countervailable

### 1. Provision of Electricity for LTAR

QAFCO reported purchasing electricity in the bulk industrial tariff category from Qatar General Electricity and Water Corporation (Kahramaa), which is an authority of the GOQ, and

---

[2] *See Melamine from Qatar:  Preliminary Affirmative Countervailing Duty Determination, Preliminary Negative Determination of Critical Circumstances, and Alignment of Final Determination with Final Antidumping Duty Determination*, 89 FR 59045 (July 22, 2024) (*Preliminary Determination*), and accompanying Preliminary Determination Memorandum (PDM) at 7.

[3] *See Preliminary Determination* and accompanying PDM at 7-9.

[4] *Id.* at 9.

2

Filed By: mira warrier, Filed Date: 9/13/24 10:24 AM, Submission Status: Approved

Barcode: 4630648-01 C-518-002 INV - Investigation

QatarEnergy reported purchasing electricity from Kahramaa through four tariff categories:  bulk industrial, light industrial, commercial or residential.[5]

As explained in the Post-Preliminary DM, we preliminary determine that the GOQ's provision of electricity at the bulk and light industries current tariff rates is *de jure* specific under section 771(5A)(D)(i) of the Act and based on record evidence we preliminary determine that the GOQ's provision of electricity at the commercial tariff rates is *de facto* specific under section 771(5A)(D)(iii)(II) because QatarEnergy is a predominant user of the commercial tariff rate.[6] The GOQ provided data showing that QatarEnergy is [                                    ] consumers of electricity in the commercial tariff category from Kahramaa during the POI, consuming [        ] Qatari Riyal (QAR) of electricity during the POI.[7]  This demonstrates that QatarEnergy is a predominant user of the commercial tariff category of electricity during the POI.

To determine the amount of the benefit, pursuant to 19 CFR 351.511(a)(2)(iii), we used Kahramaa's 2023 [                                ] QAR/kilowatt-hour (kWh) as the electricity rate benchmark rate.[8]  The GOQ has explained Kahramaa has [                    ], the current tariff rate and the [                    ].[9]  The GOQ explained that the current tariff rate is the tariff rate Kahramaa actually charges its customers and publishes on its website.[10]  It also explained that Kahramaa also calculates a [

                                                            ].[11]  The GOQ further explained that Kahramaa has a [                        ] with the Qatari Ministry of Finance (MOF) under which the [

                                                            ].  Kahramaa's financial data shows that [                                    ] Kahramaa revenue was [                                            ] and specifically its electricity sector revenue was [                                            ].[12]  The record contains Kahramaa's per-unit revenue and per-unit costs of electricity supplied by Kahramaa for the respective tariff categories.[13]  These figures show that the per-kWh revenue that Kahramaa receives from its current tariff rate is less than Kahramaa's per-kWh cost during the POI and thus the current tariff rates are not set in accordance with market principles.

To determine the amount of the subsidy we subtracted the per-kWh amount QAFCO and QatarEnergy paid for electricity from the benchmark price of the [                        ].

---

[5] *See* QMC/Muntajat's Letter, "Response to the General Questions and Program-Specific Portions of Section III of the CVD Questionnaire," dated May 10, 2024 (QMC/Muntajat's IQR) at QAFCO-14 – QAFCO-15; *see also* QMC/Muntajat's Letter, "Response to Section III Supplemental Questionnaire," dated June 27, 2024 (QMC/Muntajat SQR at 52-53, 59).

[6] *See* Post-Preliminary DM at 5-6.

[7] *See* GOQ's Post-Preliminary SQR at Exhibit SOQ-KAHRA-38.

[8] *Id.* at 3.

[9] *See* GOQ's Post-Preliminary SQR at 2- 3

[10] *Id.* at 3.

[11] *Id.*

[12] *Id.* at 6 and Exhibit SOQ-KAHRA-28.

[13] *See* Attachment II.

Filed By: mira warrier, Filed Date: 9/13/24 10:24 AM, Submission Status: Approved

Barcode: 4630648-01 C-518-002 INV - Investigation

Kahramaa's financial data shows that the [

] so therefore is an appropriate benchmark.[14]  We then multiplied this per-kWh subsidy amount by the volume of electricity each company reported that they consumed during the POI to calculate the benefit of each company.  We then divided the benefit of each company by the applicable sales value during the POI.  We then summed the *ad valorem* rate for each company.  On this basis, we preliminarily determine a countervailable subsidy rate of 0.48 percent *ad valorem*.[15]

### 2. Provision of Water for LTAR

QAFCO reported purchasing water from Kahramaa, which is an authority of the GOQ through the bulk industrial and commercial tariff category and QatarEnergy reported purchasing water from Kahramaa thought four tariff categories: bulk industrial, light industrial, commercial or residential.[16]

As explained in the Post-Preliminary DM, we preliminary determine that the GOQ's provision of water at the bulk and light industries current tariff rates is *de jure* specific under section 771(5A)(D)(i) of the Act and based on record evidence we preliminary determine that the GOQ's provision of water at the commercial tariff rates is *de facto* specific under section 771(5A)(D)(iii)(II) because QatarEnergy is a predominant user of the commercial tariff rate.[17]  The GOQ provided data showing that QatarEnergy is [                              ] consumers of water in the commercial tariff category from Kahramaa during the POI, consuming  [        ] QAR of water during the POI.[18]  This demonstrates that QatarEnergy is a predominant user of the commercial tariff category of water during the POI.

To determine the amount of the benefit, pursuant to 19 CFR 351.511(a)(2)(iii), we used Kahramaa's 2023 [                              ] QAR per cubic meter (CBM) as the water rate benchmark rate.[19]  The GOQ has explained Kahramaa has [                   ], the current tariff rate and the [                   ].[20]  The GOQ explained that the current tariff rate is the tariff rate Kahramaa actually charges its customers and publishes on its website.[21]  It also explained that Kahramaa also calculates a [

].[22]  The GOQ further explained that Kahramaa has a [
] with the Qatari MOF under which the [

].  Kahramaa's financial data shows that [
] Kahramaa's revenue was [                                        ]

---

[14] *Id.*

[15] *See* Attachment II.

[16] *See* QMC/Muntajat's IQR at QAFCO-14 and QATAREN-11 through QATAREN-12; *see also* QMC/Muntajat SQR at 52-53.

[17] *See* Post-Preliminary DM at 7-8.

[18] *See* GOQ's Post-Preliminary SQR at Exhibit SOQ-KAHRA-40.

[19] *Id* at 4.

[20] *See* GOQ's Post-Preliminary SQR at 4-5.

[21] *Id.*

[22] *Id.*

4

Filed By: mira warrier, Filed Date: 9/13/24 10:24 AM, Submission Status: Approved

and specifically its water sector revenue was [

].[23]  The record contains Kahramaa's per-unit revenue and per-unit costs of water supplied by Kahramaa for the respective tariff categories.[24]  These figures show that the per CBM revenue that Kahramaa receives from its current tariff rate is less than Kahramaa's per CBM cost during the POI and thus the current tariff rates are not set in accordance with market principles.

To determine the amount of the subsidy we subtracted the per-CBM amount QAFCO and QatarEnergy each paid for water from the benchmark price of the [                            ]. Kahramaa's financial data shows that the [

] so therefore is an appropriate benchmark.[25]  We then multiplied this per-CBM subsidy amount by the volume of water each company reported that they consumed during the POI to calculate the benefit of each company.  We then divided the benefit of each company by the applicable sales value during the POI.  We then summed the *ad valorem* rate for each company.  On this basis, we preliminarily determine a countervailable subsidy rate of 0.10 percent *ad valorem*.[26]

### 3.  Provision of Land for LTAR

As discussed in the Post-Preliminary DM, QatarEnergy received a benefit from the collection of rental income and port services fees during the POI.  QatarEnergy reported these amounts in its post-preliminary supplemental questionnaire responses.[27]

QatarEnergy reported rental income based on the revenue it collected from leases it administered in the Mesaieed Industrial City (MIC), Ras Laffan industrial City (Ras Laffan), and the Dukhan Concession Area (DCA).[28]  To calculate QatarEnergy's total rental income from the industrial areas we summed the income reported from these three areas.  QatarEnergy reported port services income from collecting fees on berthing, pilotage, stevedoring, towage, mooring, channel dues, wharf rental, [                ], and [                    ] in the Mesaieed port and Ras Laffan port.[29] To calculate QatarEnergy's total port services income, we summed the reported fees it collected from the services it provided.  We summed QatarEnergy's rental income and port services income to find the total revenue forgone by the GOQ.

---

[23] *Id.* at 6 and Exhibit SOQ-KAHRA-28.
[24] *See* Attachment II.
[25] *Id.*
[26] *See* Attachment II.
[27] *See* QMC/Muntajat's Letter, "Response to Certain Questions in the Second Post-Preliminary Supplemental Questionnaire," dated August 30, 2024 (QMC/Muntajat's Second Post-Preliminary SQR Part 1) at Exhibit LAND-18 and LAND-19; *see also* QMC/Muntajat's Letter, "Reconciliations in Response to the Second Post-Preliminary Supplemental Questionnaire," dated September 3, 2024 (QMC/Muntajat's Second Post-Preliminary SQR Part 2) at Exhibit LAND-22 and LAND-23.
[28] *See* QMC/Muntajat's Second Post-Preliminary Response at 1 and Exhibit LAND-18.
[29] *See* QMC/Muntajat's Second Post-Preliminary Response Part 1 at 1-2 and Exhibit LAND-18; *see also* QMC/Muntajat's Second Post-Preliminary SQR Part 2 at Exhibit LAND-23; and QMC/Muntajat's SQR at Exhibit LAND-10 and LAND-11.

5

Case 1:25-cv-00053-JAR   Document 57   Filed 06/18/26   Page 7 of 10
Barcode: 4630648-01 C-518-002 INV - Investigation

QAFCO rents land in the MIC from QatarEnergy via a lease agreement.[30]  Additionally, QMC rents land in the MIC from QAFCO via a sublease agreement.[31]  These companies are cross-owned in a parent-subsidiary relationship and are combined for subsidy analysis purposes under our attribution regulations.[32]  Accordingly, we do not consider the lease agreements between QatarEnergy and QAFCO, as cross-owned entities, to give rise to a subsidy.  Thus, we subtracted the rent due from QAFCO to QatarEnergy during the POI from QatarEnergy's total benefit during the POI.  We calculated rent due from QAFCO to QatarEnergy based on QAFCO's reported [                                                    ], and [
    ].[33]

We find that QatarEnergy received a financial contribution because the rental and port services income the GOQ granted QatarEnergy the right to collect, which would otherwise have been collected by the GOQ absent the delegation of these rights to QatarEnergy by decree, represents revenue forgone by the GOQ within the meaning of section 771(5)(D)(ii) of the Act.  Further, we find the program to be specific under section 771(5A)(D)(i) of the Act because these usufruct rights were granted by law, which expressly limits these rights to QatarEnergy.[34]  To calculate the total benefit, we subtracted rent due from QAFCO to QatarEnergy during the POI from rental income and port services income collected by QatarEnergy during the POI.  We divided QatarEnergy's POI benefit by QatarEnergy's total consolidated sales value, net of sales made by non-Qatari subsidiaries and intercompany sales between QatarEnergy and QAFCO, for the POI.  On this basis, we preliminarily determine a countervailable subsidy rate of 1.71 percent *ad valorem*.[35]

---

[30] *See* QMC/Muntajat's SQR at 62 and Exhibit Land-09.

[31] *Id*. at 62 and Exhibit Land-09.  QMC does not pay rent directly to QatarEnergy.  Rather QMC subleases land from QAFCO and pays rent to QAFCO.  In turn, QAFCO pays rent to QatarEnergy for the entirety of land it leases, including the land it subleases to QMC.

[32] *See Preliminary Determination* PDM at 7-8.

[33] *See* QMC/Muntajat Second Post-Preliminary SQR Part 1 at Exhibit Land-20.

[34] *See* GOQ's Post-Preliminary SQR at Exhibits SOQ-LAND-04, SOQ-LAND-05, SOQ-LAND-06, SOQ-LAND-08, and SOQ-LAND-12 (page 1).

[35] *See* Attachment II.

Filed By: mira warrier, Filed Date: 9/13/24 10:24 AM, Submission Status: Approved

Barcode: 4630648-01 C-518-002 INV - Investigation

## ATTACHMENTS

Attachment I:        Summary of Preliminary Subsidy Rates (Public)

Attachment II:       Detailed Preliminary Benefit Calculations (Excel Data Spreadsheet, Business Proprietary and Not Subject to Public Summarization)

7

Filed By: mira warrier, Filed Date: 9/13/24 10:24 AM, Submission Status: Approved

Barcode: 4630648-01 C-518-002 INV - Investigation

**Attachment I:**
**Summary of Subsidy Rates (Public)**

| Summary of Countervailable Subsidy Programs and Subsidy Rates | |
| --- | --- |
| **Subsidy Program** | **Rate** |
| Provision of Electricity for LTAR | 0.48% |
| Provision of Water for LTAR | 0.10% |
| Provision of Management, Usage, and Usufruct Rights over Industrial Areas | 1.71% |
| **Total *Ad Valorem* Subsidy Rate** | **2.29%** |

Barcode: 4630648-01 C-518-002 INV - Investigation

**Attachment II:**
**Detailed Benefit Calculations (Excel Data Spreadsheet, Business Proprietary)**

Filed By: mira warrier, Filed Date: 9/13/24 10:24 AM, Submission Status: Approved